1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    KEVIN L. BOOT,

9                          Petitioner,          Case No. C22-678-RSL-SKV

10        v.

11    JAMES KEY,                                 REPORT AND RECOMMENDATION

12                          Respondent.

13

14        I.    **INTRODUCTION AND SUMMARY CONCLUSION**

15        This is a federal habeas action filed under 28 U.S.C. § 2254.  Petitioner Kevin Boot, who

16    is under the jurisdiction of the Indeterminate Sentence Review Board ("the Board"), seeks to

17    challenge in this action a 2017 decision of the Board that extended his minimum term by 90

18    months.  *See* Dkt. 4.  Respondent filed an answer to the petition together with relevant portions

19    of the state court record.  Dkts. 7, 8.  Respondent argued in his answer that Petitioner's federal

20    habeas petition is untimely under 28 U.S.C. § 2244(d).  *See* Dkt. 7.  Petitioner filed a response to

21    Respondent's answer, and Respondent filed a reply.  Dkts. 9, 10.  The Court subsequently

22    directed the parties to submit supplemental briefing on the issues of equitable tolling and

23

REPORT AND RECOMMENDATION
PAGE - 1

1  mootness.  Dkt. 11.  Respondent filed a supplemental brief (Dkt. 12), but Petitioner did not.  This

2  Court, having now reviewed Petitioner's petition, all briefing of the parties, and the state court

3  record, concludes that Petitioner's petition should be denied and this action should be dismissed

4  with prejudice.

## II.    BACKGROUND

6      On May 19, 1982, following a jury trial, Petitioner was found guilty in King County

7  Superior Court on charges of rape in the first degree and robbery in the second degree.  *See* Dkt.

8  8, Exs. 1, 2.  On December 19, 1983, Petitioner was sentenced under Washington's then

9  indeterminate sentencing scheme to concurrent terms of life imprisonment.  *See id*.  Because

10  Petitioner was found to be a habitual criminal, the Board set Petitioner's minimum term at 180

11  months on each count, with those terms to be served concurrently.  *See id*., Ex. 3 at 3.  The Board

12  thereafter extended Petitioner's minimum term multiple times.  *See id*., Ex. 5 at 31-69.  As

13  relevant here, on August 14, 2017, the Board issued a decision in which it found Petitioner not

14  parolable and added 90 months to his minimum term.[1]  *Id*., Ex. 3 at 2-8.

15      On July 26, 2018, Petitioner filed a personal restraint petition challenging the Board's

16  August 2017 decision.  *See id*., Exs. 4, 5.  The Acting Chief Judge of the Court of Appeals

17  dismissed the petition on August 13, 2019.  *Id*., Ex. 6.  Petitioner sought review by the

18  Washington Supreme Court and, the Supreme Court Commissioner issued a ruling denying

19  review on January 27, 2020.  *Id*., Exs. 7, 8.  Petitioner thereafter moved to modify the

20  Commissioner's ruling, and that motion was denied on June 3, 2020.  *Id*., Exs. 9, 10.  On June

---

[1] Petitioner appeared before the Board again on September 27, 2022, and the Board once again found Petitioner not parolable and added another 90 months to his minimum term.  *See* Dkt. 12, Ex. 21.

REPORT AND RECOMMENDATION
PAGE - 2

22, 2020, the Washington Court of Appeals issued a certificate of finality in Petitioner's first personal restraint proceeding pertaining to the Board's August 2017 decision.  *Id.*, Ex. 11.

On June 18, 2020, Petitioner filed a petition for writ of habeas corpus in this Court challenging the Board's August 2017 decision.  *See Boot v. Key*, No. C20-943-RSM-BAT (W.D. Wash. Dec. 29, 2020), Dkts. 1, 4.  After obtaining briefing from the parties, the Court determined that Petitioner had not exhausted his state court remedies with respect to all claims asserted in his petition, and therefore dismissed what was deemed a "mixed petition" without prejudice to allowing Petitioner to return to this Court later with a new petition containing only fully exhausted grounds for relief.  *See id.*, Dkts. 7, 10, 12, 14, 15, 17.

On January 11, 2021, Petitioner filed a second personal restraint petition challenging the Board's August 2017 decision in the Washington Court of Appeals.  *See* Dkt. 8, Exs. 12, 13. The Acting Chief Judge of the Court of Appeals dismissed the petition on December 2, 2021, upon concluding that the petition was untimely.  *Id.*, Ex. 14.  Petitioner sought further review by the Washington Supreme Court and, on January 26, 2022, the Supreme Court Commissioner issued a ruling denying review.  *Id.*, Exs. 15, 16.  The Commissioner agreed with the conclusion of the Acting Chief Judge that the petition was untimely.  *Id.*, Ex. 16.  Petitioner moved to modify the Commissioner's ruling, and that motion was denied.  *Id.*, Exs. 17, 18.  The Washington Court of Appeals issued a certificate of finality in Petitioner's second personal restraint proceeding on April 19, 2022.  *Id.*, Ex. 19.

On May 18, 2022, Petitioner filed the instant petition for writ of habeas corpus in which he once again seeks federal habeas review of the Board's August 2017 decision.  *See* Dkts. 1, 4. On July 22, 2022, Respondent filed an answer to the petition in which he argued that the petition

REPORT AND RECOMMENDATION
PAGE - 3

was untimely under 28 U.S.C. § 2244(d).  Dkt. 7 at 4.  Respondent also asserted in his answer that once the Board held a new hearing and issued a new decision, which was at that time anticipated to occur on July 26, 2022, the instant petition would be moot.  *Id*. at 4 n.2.  Petitioner filed a response to Respondent's answer on August 10, 2022, in which he suggested that equitable tolling may be appropriate in this case.  *See* Dkt. 9.  On August 18, 2022, Respondent filed a reply brief in which he noted that Petitioner's Board hearing had been rescheduled which prevented his petition from being moot at that time.  Dkt. 10 at 1.  Respondent also reiterated his claim that the petition was not timely filed, and he argued that Petitioner's response did not show he was entitled to a sufficient amount of tolling to render the petition timely for purposes of federal habeas review.  *Id*. at 1-2.

On October 7, 2022, after reviewing the parties' briefing and the state court record, this Court issued an Order directing the parties to submit supplemental briefing.  Dkt. 11.  Specifically, the Court directed Respondent to address whether Petitioner was entitled to equitable tolling in this matter, and to further address the mootness issue in light of the fact that Petitioner's parolability hearing appeared to have been rescheduled for September 27, 2022.  *Id*.  Respondent filed his supplemental brief on October 31, 2022.  Dkt. 12.  Petitioner was granted leave to file a response to Respondent's supplemental brief (*see* Dkt. 11 at 3) but he has not done so.  The Court deems the briefing in this matter complete, and Petitioner's federal habeas petition is now ripe for review.

### III.   GROUNDS FOR RELIEF

Petitioner identifies the following five grounds for relief in his federal habeas petition:

1.   Petitioner's constitutional rights were violated when the lower court changed the facts by pyramiding, and or conclusive presumption that

REPORT AND RECOMMENDATION
PAGE - 4

invades the evidence and fact finding functions of his petition, avoiding the Board's constitutional violations.

2. The parole board violated Petitioner's constitutional rights in demanding that he waive his Fifth Amendment right to not incriminate himself into civil commitment or not be paroled.

3. The 14th Amend., due process rights were violated by the Board when they used the MnSOST-R instrument tool for the August 14, 2017 hearing decision to deny Petitioner's parole.

4. Petitioner has a constitutional right to petition the court after the parole board has reset his minimum term.

5. Was Ex Post Facto Clause violated when the Board used the risk assessment tools to find Petitioner a high risk to reoffend, when the tools are not being used correctly to deny parole.

Dkt. 4-1 at 1-3 (capitalization modified).

## IV.    DISCUSSION

### A.    Mootness

As noted above, Respondent argued in his answer to Petitioner's petition that the petition would become moot once the Board issued a new decision regarding Petitioner's parolability. Dkt. 7 at 4 n.2.  At that time, Petitioner's next regular parole hearing was scheduled for July 26, 2022, four days after Respondent submitted his answer to the petition.  *See id*.  When Respondent subsequently filed a reply brief in support of his answer, he advised the Court that Petitioner's hearing had been continued to an unspecified date and that the petition was therefore not moot at that time.  *See* Dkt. 10 at 1.  The Court thereafter determined that Petitioner's hearing had been rescheduled for September 27, 2022.  *See* Dkt. 11 at 2.  When the Court concluded in early October that additional briefing was necessary on the issue of equitable tolling, it sought additional briefing on the mootness issue as well, asking that Respondent advise the Court

REPORT AND RECOMMENDATION
PAGE - 5

whether a new decision had been issued by the Board and explain how any such decision affected the viability of Petitioner's current federal habeas petition. *See id*. at 2-3.

Respondent, in his supplemental brief, confirms that a new decision has been issued by the Board, but indicates that Petitioner's petition appears not to be moot in light of a 2017 unpublished memorandum decision by the Ninth Circuit. *See* Dkt. 12, citing *Woods v. Valenzuela*, 734 F. App'x 394, 395 (9th Cir. 2017).

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner/plaintiff "must have suffered, or be threatened with an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). A case becomes moot when it no longer meets the case or controversy requirement of Article III, § 2 of the United States Constitution. *Id*.

In *Woods*, the Ninth Circuit concluded that when an inmate is denied parole at a new parole hearing, an alleged constitutional violation at a prior hearing inflicts a continuing harm sufficient to preclude mootness. *Woods*, 734 F. App'x at 395. Thus, while the Board recently issued a new decision finding Petitioner not parolable, and Petitioner is therefore no longer subject to the 2017 Board decision he challenges here, under the reasoning of *Woods* the instant petition is not moot. This is so because Petitioner appears to assert here that absent the alleged violation of his constitutional rights at the 2017 hearing, the Board would not have denied him parole. *See id*.

REPORT AND RECOMMENDATION
PAGE - 6

**B.    Statute of Limitations**

Respondent argues in his answer to Petitioner's petition that the petition is time barred under 28 U.S.C. § 2244(d).  *See* Dkt. 7.  The Antiterrorism and Effective Death Penalty Act ("AEDPA") established a one-year limitation period for state prisoners to file applications for federal habeas relief.  *See* 28 U.S.C. § 2244(d)(1).

1.    *Starting Date for Running of Limitations Period*

Pursuant to 28 U.S.C. § 2244(d)(1), the one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Because Petitioner's claims challenge both the actions of the Board and the actions of the Washington appellate courts in relation to the Board's August 2017 decision, it appears the limitations period is properly calculated by applying § 2244(d)(1)(D).  *See Redd v. McGrath*, 343 F.3d 1077 (9th Cir. 2003).  Thus, the starting date for the calculation of the statute of limitations is the date the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(D).  The Ninth Circuit has held that the one-year statute of limitations in § 2244(d)(1) applies to each claim asserted in a federal habeas petition on an individual basis.  *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2021).

REPORT AND RECOMMENDATION
PAGE - 7

1    The Court must therefore determine the starting date for Petitioner's various claims

2    independently. Here, however, the claims can be grouped into two general categories, *i.e.,*

3    claims for which the factual predicate was discovered during the course of Petitioner's first

4    personal restraint proceeding, and those for which the factual predicate should have been known

5    not later than the date on which Petitioner received the Board's August 2017 decision.[2]

6                     a.    Claims Pertaining to Actions of Appellate Courts

7             Petitioner asserts in his first ground for relief that the "pyramiding" of facts by the

8    Washington Court of Appeals in its opinion dismissing Petitioner's first personal restraint

9    petition, violated his due process rights. *See* Dkt. 4-1 at 1. It thus appears that the factual

10   predicate for this claim was known to Petitioner as of the date the Court of Appeals issued it

11   opinion, August 13, 2019. *See* Dkt. 8, Ex. 6.

12            Petitioner asserts in his fourth ground for relief that he has a constitutional right to

13   petition the state courts for review after the Board resets his minimum term and that he therefore

14   is not precluded from filing a personal restraint petition after each such decision. Dkt. 4-1 at 3.

15   Though this claim is somewhat vague, Respondent suggests, and Petitioner does not dispute, that

16   this claim arises out of a comment made by the Washington Supreme Court Commissioner in his

17   January 2020 ruling denying Petitioner's September 2019 motion for discretionary review. Dkt.

18   7 at 7. In particular, the Commissioner noted that Petitioner's arguments challenging the Board's

19   August 2017 decision were substantially the same as those raised by Petitioner in previous

20   personal restraint petitions challenging earlier Board decisions. *See* Dkt. 7 at 7 (citing Dkt. 8,

21   Ex. 8 at 2, Ex. 9 at 3-4, Ex. 12 at 4). It thus appears that the factual predicate for this claim was

22
23            [2] The Board's final decision was distributed to relevant parties on or about August 21, 2017. *See* Dkt. 8, Ex. 3 at 1.

REPORT AND RECOMMENDATION
PAGE - 8

known to Petitioner as of the date the Commissioner issued his decision, January 27, 2020. *See* Dkt. 8, Ex. 8.

   b. <u>Claims Pertaining to August 2017 Board Decision</u>

  Petitioner asserts in his second ground for relief that the Board violated his constitutional rights when it demanded he waive his Fifth Amendments rights in order to be eligible for parole. Dkt. 4-1 at 1-2. Petitioner references in this claim a number of Board decisions regarding his parole eligibility, including the most recent one issued in 2017, suggesting that the factual predicate of the claim, which appears to relate to Petitioner's refusal to participate in sex offender treatment, has been known to Petitioner for many years. *See id*. However, it is sufficient for current purposes to conclude that the factual predicate for this claim was known to Petitioner, at the latest, when he received the Board's decision in late August 2017.

  Petitioner's third and fifth grounds for relief challenge the constitutionality of the Board's reliance on, and/or improper use of, risk assessment tools, specifically the MnSOST-R and the Static 99-R. Dkt. 4-1 at 2-3. While Respondent asserts that the factual predicates of these claims were known to Petitioner years prior to the Board's August 2017 decision as they were referenced in earlier Board decisions (*see* Dkt. 7 at 7), it is again sufficient for current purposes to conclude that the factual predicate for these claims was known to Petitioner, at the latest, when he received the Board's decision in late August 2017.

   *2. Statutory Tolling*

  Pursuant to 28 U.S.C. § 2244(d)(2), the one-year limitation period is tolled for any "properly filed" collateral state challenge "to the pertinent judgment or claim." Petitioner has filed two collateral state court challenges related to the August 2017 Board decision at issue here.

REPORT AND RECOMMENDATION
PAGE - 9

Petitioner timely filed his first personal restraint petition in the Court of Appeals on July 26, 2018. Dkt. 8, Ex. 4. Thus, Petitioner's first collateral challenge was properly filed and therefore acted to toll the limitations period. Petitioner filed his second personal restraint petition on January 11, 2021, almost three and a half years after the Board's decision. *Id*., Ex. 12. Petitioner's second collateral challenge did not act to toll the limitations period because the state courts concluded the petition was untimely under state law and the petition therefore cannot be deemed properly filed for purposes of § 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (holding that a prisoner's post-conviction petition that was rejected by the state court as untimely was not "properly filed" for purposes of § 2244(d)(2) and the prisoner was not entitled to statutory or equitable tolling of the federal statute of limitations). The Court now considers how statutory tolling impacts the two sets of claims identified above.

As to Petitioner's first set of claims, those for which the factual predicate became known during the pendency of Petitioner's first state collateral challenge, the statute of limitations began to run the day following the conclusion of those proceedings, or June 23, 2020. Though Petitioner had by then filed his first federal habeas petition, a properly filed federal habeas petition does not toll the limitations period. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). Likewise, as explained above, Petitioner's second state collateral challenge did not act to toll the limitations period because it was not properly filed for purposes of § 2244(d)(2). Thus, the statute of limitations with respect to Petitioner's first and fourth grounds for relief ran unimpeded from June 23, 2020, until it expired on June 23, 2021, almost a year before Petitioner filed the instant habeas action in May 2022.

REPORT AND RECOMMENDATION
PAGE - 10

1    As to Petitioner's second set of claims, those for which the factual predicate became

2 known not later than the date on which Petitioner received the Board's August 2017 decision, the

3 Court first observes that it is unclear from the record when Petitioner received the decision.  The

4 Court presumes, however, that it occurred on or about August 21, 2017, when the decision was

5 apparently disseminated to relevant parties (*see* Dkt. 8, Ex. 3 at 1), and the Court will therefore

6 use that date as the starting point for calculation of the limitations period.

7    Consistent with Rule 6(a)(1)(A) of the Federal Rules of Civil Procedure, Petitioner's one-

8 year statute of limitations began to run the day following Petitioner's presumed receipt of the

9 Board's decision, or August 22, 2017.  *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002).

10 The statute of limitations then ran for 338 days before Petitioner filed his initial personal restraint

11 petition on July 26, 2018, which stopped the clock on the running of the statute of limitations.

12 The Washington Court of Appeals issued a certificate of finality in Petitioner's personal restraint

13 proceedings on June 22, 2020, thus concluding review in the state courts.  *See* Dkt. 8, Ex. 11.

14 The statute of limitations began to run again the following day, June 23, 2020, and expired 27

15 days later on July 20, 2020.  Thus, as to Petitioner's second, third and fifth grounds for relief, the

16 statute of limitations expired almost two years before Petitioner filed the instant federal habeas

17 action.

18         3.    *Equitable Tolling*

19    The statute of limitations governing federal habeas petitions is subject to equitable tolling

20 in appropriate circumstances.  *Holland v. Florida*, 560 U.S. 631 (2010).  The Ninth Circuit has

21 made clear that equitable tolling is justified in very few cases, noting that "the threshold

22 necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow

23

REPORT AND RECOMMENDATION
PAGE - 11

the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).  A petitioner bears the

burden of showing that equitable tolling should be applied.  *Id*. at 1065.  In order to receive

equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstance stood in his way' and prevented timely filing."

*Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

      As relevant here, the Ninth Circuit has held that

> When a district court dismisses a mixed petition without first offering the
> petitioner the option to amend the mixed petition to remove the unexhausted
> claims, "the petitioner is entitled to equitable tolling of the AEDPA statute of
> limitations from the date the mixed petition was dismissed until the date a new
> federal habeas petition is filed, assuming ordinary diligence."

*Butler v. Long*, 752 F.3d 1177, 1181 (9th Cir. 2014) (quoting *Jefferson v. Budge*, 419 F.3d 1013,

1014 (9th Cir. 2005)).

      Respondent concedes in his supplemental brief that Petitioner is entitled to some

equitable tolling in this case, in accordance with the Ninth Circuit's holdings in *Butler* and

*Jefferson*, because of the manner in which the Court disposed of Petitioner's prior federal habeas

action.  *See* Dkt. 12 at 3-4.  In that case, Respondent argued that Petitioner's petition was mixed

because it contained both exhausted and unexhausted claims, and that the Court should direct

Petitioner to amend his petition or afford him the opportunity to stay the petition under *Rhines v.*

*Weber*, 544 U.S. 269 (2005).  *See Boot*, No. C20-943-RSM-BAT, Dkt. 7 at 12-16.  Petitioner, in

his responses to Respondent's answer, expressed his belief that his claims were exhausted and

that he had not presented a mixed petition.  *See id*., Dkt. 10 at 6, Dkt. 12 at 4.

      The Magistrate Judge thereafter issued a Report and Recommendation in which he

concurred with Respondent that Petitioner had presented a mixed petition, and went on to discuss

1    the options under *Rhines*. *Id*., Dkt. 15 at 5. The Magistrate Judge concluded that the option that

2    best preserved all of Petitioner's federal habeas claims was dismissal of the mixed petition

3    without prejudice to Petitioner filing a subsequent petition once he had fully exhausted all of his

4    claims in the state courts. *See id*. The Magistrate Judge observed that Petitioner did not appear

5    to be procedurally barred from exhausting his unexhausted claims in state court, and that

6    Petitioner did not appear "to be in imminent danger of running afoul of the one-year limitations

7    on federal habeas petitions." *Id*., Dkt. 15 at 6. The Magistrate Judge advised Petitioner,

8    however, that he should "act expeditiously," and "be cognizant that the one-year limitations

9    period would not be tolled were his subsequent personal restraint [petition to] be considered not

10   'properly filed.'" *Id*., Dkt. 15 at 7.

11        Petitioner filed objections to the Report and Recommendation in which he indicated that

12   after reading the document several times, he understood the course he should have taken, and he

13   asked the Court to stay and abey the petition. *Id*., Dkt. 16. The Report and Recommendation

14   was adopted by Order issued on December 29, 2020, but no reference was made therein to

15   Petitioner's request to stay and abey. *See id*., Dkt. 17.

16        This Court agrees with Respondent's assertion that because the Court in Petitioner's prior

17   federal habeas action did not grant him leave to amend or to stay and abey his petition, he

18   appears to be entitled to some equitable tolling in this action under *Butler* and *Jefferson*.

19   This Court also agrees that, consistent with *Butler* and *Jefferson*, Petitioner is entitled to

20   equitable tolling of the federal statute of limitations from the date his prior petition was

21   dismissed until the instant action was filed, given that Petitioner acted diligently in presenting his

22   claims to the state courts and then returning to this Court to seek further review. However,

23

REPORT AND RECOMMENDATION
PAGE - 13

1   Petitioner is entitled to equitable tolling only as to his second ground for relief because, as will

2   be discussed below, that is the only one of Petitioner's five grounds for relief that is eligible for

3   federal habeas review.  *See Butler*, 752 F.3d at 1181 (equitable tolling is determined on a claim-

4   by-claim basis).

5   **C.      Viability of Petitioner's First, Third, Fourth and Fifth Grounds for Relief**

6          *1.      Cognizability of Grounds One and Four*

7          Plaintiff asserts in his first ground for relief that the Washington Court of Appeals, in

8   ruling on his first personal restraint petition challenging the Board's August 2017 decision,

9   engaged in unconstitutional "pyramiding" when it "rearrang[ed] the facts" in its order dismissing

10  the petition.  Dkt. 4-1 at 1.  Petitioner asserts in his fourth ground for relief that he has a First

11  Amendment right to petition the Court and that he should not be precluded by Rule 16.4(d) of the

12  Washington Rules of Appellate Procedure from filing a personal restraint petition when the

13  Board resets his minimum term.  *Id*. at 3.  Respondent argues that neither of these claims is

14  cognizable on federal habeas review because they allege errors in the state collateral review

15  process, and not in the parole process which underlies Petitioner's current detention.  Dkt. 12 at

16  4.  Petitioner has not responded in any fashion to this argument.

17         The Ninth Circuit has made clear that "federal habeas relief is not available to redress

18  alleged procedural errors in state post-conviction proceedings."  *Ortiz v. Stewart*, 149 F. 3d 923,

19  939 (9th Cir. 1998), *overruled on other grounds as recognized by Apelt v. Ryan*, 878 F.3d 800,

20  827-28 (9th Cir. 2017); *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989).  The reason for this is

21  that a petition for writ of habeas corpus must allege that a petitioner's detention violates the

22  constitution, or federal laws or treaties.  *See Franzen*, 877 F.2d at 26; *see also* 28 U.S.C. §§

23

REPORT AND RECOMMENDATION
PAGE - 14

2241(c)(3), 2254(a).  Claims alleging errors in the state post-conviction process "do not represent an attack on the prisoner's detention and therefore are not proper grounds for habeas relief." *Franzen*, 877 F.2d at 26.

Though Petitioner's first and fourth grounds for relief, as stated in his petition, are not particularly clear, it does appear that these claims allege errors in the processes employed by the state courts in resolving Petitioner's request for relief and are not directed to the decision of the parole board which is the basis of Petitioner's federal habeas challenge.  These claims are therefore not cognizable in this federal habeas action and should be dismissed.  As Respondent correctly notes, because these claims are not cognizable here, the Court need not address the issue of equitable tolling with respect to these claims.

2. *Exhaustion of Grounds Three and Five*

Plaintiff asserts in his third ground for relief that his due process rights were violated when the Board used the MnSOST-R screening tool to deny him parole.  Dkt. 4-1 at 2. Petitioner asserts in his fifth ground for relief that the Board's improper use of risk assessment tools to deny him parole violated the Ex Post Facto Clause.  *Id*. at 3.  Respondent argues that these claims are procedurally defaulted because the state courts refused to consider these claims in Petitioner's second personal restraint proceeding on the grounds that the petition was untimely.  Dkt. 12 at 4-5.

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971)

REPORT AND RECOMMENDATION
PAGE - 15

(internal quotation marks and citations omitted).  In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

"In order to 'fairly present' an issue to a state court, a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'"  *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009)). *See also Picard*, 404 U.S. at 275-78 (1971) (proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory on which the claim is based).  Claims that are based on the same facts must be separately exhausted if they are supported by distinct constitutional theories.  *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).  A habeas petitioner who fails to meet a state's procedural requirements for presenting his federal claims deprives the state courts of the opportunity to address those claims in the first instance.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

When a prisoner defaults on his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Id*. at 750.  If the last state court to decide a federal claim

REPORT AND RECOMMENDATION
PAGE - 16

clearly and expressly states that its judgment rests on a state procedural bar, there is a procedural default for purposes of federal habeas review. *Harris v. Reed*, 489 U.S. 255, 263 (1989).

As the Court explained in disposing of Petitioner's prior federal habeas petition, Petitioner's claim pertaining to the use of the MnSOST-R risk assessment tool was presented to both the Washington Court of Appeals and the Washington Supreme Court in his initial personal restraint proceeding, but he alleged a federal due process violation only in his motion for discretionary review to the Washington Supreme Court. *See Boot*, C20-943-RSM-BAT, Dkt. 15 at 4. Because Petitioner failed to allege a due process violation at each level of state court review, he failed to "fairly present" the claim and the claim was therefore not properly exhausted. *See id.*, Dkt. 15 at 4-5.

Petitioner's claim that use of the risk assessment tools to deny him parole violated the Ex Post Facto Clause was never presented to the Washington Court of Appeals, it was presented only to the Washington Supreme Court in Petitioner's motion for discretionary review. *See id.*, Dkt. 15 at 4. Once again, because Petitioner failed to raise his ex post facto claim at each level of state court review, he failed to "fairly present" the claim and the claim was therefore not properly exhausted. *See id.*, Dkt. 15 at 4-5.

When Petitioner returned to the state courts to attempt to exhaust these claims, the state courts concluded that Petitioner's second personal restraint petition was untimely under RCW 10.73.090 because it was not filed within one year of the Board's decision. *See* Dkt. 8, Exs. 14, 16.[3] The Ninth Circuit has recognized that the state time bar statute invoked by the state courts

---

[3] The state courts also acknowledged in their decisions the Board's argument that the two-year "catch-all" statute of limitations set forth in RCW 4.16.130 applied to Petitioner's personal restraint petition rather than the one-year statute of limitations set forth in RCW 10.73.090, but the courts did not resolve the issue of which statute

to bar the claims asserted by Petitioner in his second personal restraint petition, *i.e.*, RCW 10.73.090, provides an independent and adequate state procedural ground to bar federal habeas review. *See Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Shumway v. Payne*, 223 F.3d 982, 989 (9th Cir. 2000). Because the state courts concluded that the claims asserted in Petitioner's second personal restraint petition were procedurally barred pursuant to an independent and adequate state procedural rule, there is a procedural default for purposes of federal habeas review.

Petitioner makes no effort to demonstrate cause for his default and actual prejudice as a result of the alleged violations of federal law, nor does he attempt to demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner's third and fifth grounds for relief should therefore be dismissed. And, because these claims are subject to dismissal on grounds independent of the federal statute of limitations, the Court need not address the issue of equitable tolling with respect to these claims.

### D.    Merits of Ground Two (Fifth Amendment Violation)

#### 1.    *Federal Habeas Standard, 28 U.S.C. § 2254*

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or if the decision was

---

actually applied because Petitioner's petition was untimely under either statute. *See Boot*, C20-943-RSM-BAT, Ex. 14 at 3 n.1, Ex. 16 at 1-2.

REPORT AND RECOMMENDATION
PAGE - 18

based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer*, 538 U.S. at 71-72.  "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."  *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

REPORT AND RECOMMENDATION
PAGE - 19

1    In considering a habeas petition, this Court's review "is limited to the record that was

2    before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

3    170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

4    state court, such determination shall be presumed correct, and the applicant has the burden of

5    rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

6    § 2254(e)(1).

7            2.    *Analysis*

8    As discussed above, Petitioner has presented only one ground for relief in his petition that

9    is eligible for federal habeas review, and that is ground two. Petitioner alleges therein that the

10   Board violated his constitutional rights when it demanded that he waive his Fifth Amendment

11   right to not incriminate himself in order to be paroled. Dkt. 4-1 at 1-2. Though the claim, as set

12   forth in the petition, is somewhat vague, it appears to relate to the Board's requirement that

13   Petitioner complete the Washington Department of Corrections' Sex Offender Treatment and

14   Assessment Program ("SOTAP") as a pre-condition to being deemed parolable. *See* Dkt. 8, Ex.

15   6 at 6.

16   The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any

17   criminal case to be a witness against himself." U.S. Const Amend V. It is well settled that the

18   privilege against self-incrimination "not only permits a person to refuse to testify against himself

19   at a criminal trial in which he is a defendant, but also 'privileges him not to answer official

20   questions put to him in any other proceeding, civil or criminal, formal or informal, where the

21   answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S.

22   420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). However, the Supreme

23

REPORT AND RECOMMENDATION
PAGE - 20

1  Court has indicated that "a state may validly insist on answers to even incriminating questions

2  and hence sensibly administer its probation system, as long as it recognizes that the required

3  answers may not be used in a criminal proceeding." *Id*. at 435 n.7.

4      The Washington Court of Appeals considered and rejected Petitioner's Fifth Amendment

5  claim in the first of his two personal restraint proceedings relating to the Board's August 2017

6  decision.  Dkt. 8, Ex. 6 at 6.  The Court of Appeals explained its conclusion as follows:

7          Boot also appears to argue that requiring him to participate in SOTP
          violated his Fifth Amendment right against self-incrimination because he is
8          ineligible for the treatment unless he admits his [sic] culpable for the
          underlying sex offense.  *See* DOC Policy 570.000 (sex offender seeking treatment
9          must "acknowledge/recall" having committed a sex offense).  However, Boot
          made virtually the same argument when he unsuccessfully challenged the Board's
10         extension of his sentence in 2014.  *See* No. 74504-2-I.  But Boot cannot show that
          engagement in sex offender treatment will require him to answer questions that
11         present a true risk of incrimination, since he is eligible as long as he
          acknowledges having committed a sex offense at some point in his life.
12         Furthermore, as explained, it is well settled that the Board may deny parole if the
          offender remains unrehabilitated, and in making that decision, the Board may
13         consider the offender's refusal of treatment that required him to take
          responsibility for criminal behavior, even when he maintained his innocence.
14         *Dyer*, 164 Wn.2d at 288 n.4.

15  *Id*.

16      Petitioner makes no showing that this decision of the Washington Court of Appeals is

17  contrary to, or constitutes an unreasonable application of, United States Supreme Court

18  precedent.  Indeed, Petitioner makes no argument whatsoever in this proceeding regarding the

19  merits of his Fifth Amendment claim, he merely relies on the assertion that the Board has

20  "[d]emand[ed]" he waive his Fifth Amendment right to "Not Incriminate Himself Into Civil

21  Commitment" in order to be paroled.  Dkt. 4-1 at 1.  While Petitioner's resistance to participating

22  in sex offender treatment is clear, he simply fails to demonstrate that the requirement that he do

23

REPORT AND RECOMMENDATION
PAGE - 21

1  so constitutes a violation of his Fifth Amendment rights. Petitioner's federal habeas petition

2  should therefore be denied with respect to his second ground for relief.

3       **E.**      **Certificate of Appealability**

4       A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

5  dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

6  district or circuit judge. A certificate of appealability may issue only where a petitioner has

7  made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A

8  petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

9  district court's resolution of [his] constitutional claims or that jurists could conclude the issues

10  presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

11  U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to

12  a certificate of appealability in this matter.

13                   **V.**      **CONCLUSION**

14       For the reasons set forth above, this Court recommends that Petitioner's petition for writ

15  of habeas corpus be denied and this action be dismissed with prejudice. This Court further

16  recommends that a certificate of appealability be denied. A proposed Order accompanies this

17  Report and Recommendation.

18       Objections to this Report and Recommendation, if any, should be filed with the Clerk and

19  served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

20  and Recommendation is signed. Failure to file objections within the specified time may affect

21  your right to appeal. Objections should be noted for consideration on the District Judge's

22  motions calendar for the third Friday after they are filed. Responses to objections may be filed

23

REPORT AND RECOMMENDATION
PAGE - 22

within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 23, 2022**.

DATED this 29th day of November, 2022.


S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 23